MARSH et al. v. PHILLIPS et al.

(Court of Civil Appeals of Texas. San Antonio. Jan. 17, 1912. Rehearing Denied March 13, 1912.)

1. PRINCIPAL AND SURETY (§ 173*)— SIGNING BY PRINCIPAL—EFFECT AS TO SURETIES.

A principal is bound to reimburse his sureties, whether he signs the bond or not.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 497–499; Dec. Dig. § 173.*]

2. PRINCIPAL AND SURETY (§ 81*) — DISCHARGE.

Where a lease required lessee to put certain machinery and stock in a leased building on which the lessor was given a lien for rent, the lessee to give a bond to secure performance of the condition which was to stand as liquidated damages for expenses in making changes in the building, the facts that the property put into the building was subject to a lien, that parts of it were released upon the claim of a third person, and that certain rent was paid before lessee abandoned the premises did not release the sureties.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 126; Dec. Dig. § 81.*]

3. PRINCIPAL AND SURETY (§ 46*)—SIGNATURE OF PRINCIPAL—ESTOPPEL.

Where the sureties on a bond, after themselves signing it, permitted the principal to take it without his signature, they cannot, as against the obligee, object that it was not signed by the principal, and must themselves bear any resulting loss.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 91–95; Dec. Dig. § 46.*]

4. PRINCIPAL AND SURETY (§ 20*)—SIGNATURE OF PRINCIPAL—NECESSITY.

A bond signed by the sureties with the intention of being bound was valid as to them, though the principal to whom they delivered it did not sign it.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 39–42; Dec. Dig. § 20.*]

5. LANDLORD AND TENANT (§ 157*)—IMPROVEMENTS—PERFORMANCE—BOND.

The owner of property leased it for five years for a candy factory under a lease which required the lessee to put into the building a large amount of machinery, for operating the factory, the rent to be a lien thereon, and a bond was executed by lessee conditioned on the lessee's placing the machinery as agreed, the bond to remain in effect as liquidated damages in case of nonperformance for the cost of making the changes. Held, that the lessee was bound to put substantially all of the machinery into the building which he agreed to place there and the putting of a part of it did not satisfy the bond.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 571–607; Dec. Dig. § 157.*]

6. DAMAGES (§ 78*)—LIQUIDATED DAMAGES OR PENALTY.

The amount specified in the bond was not a penalty, but provided for liquidated damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 157–163; Dec. Dig. § 78.*]

7. EVIDENCE (§ 460*)—PAROL EVIDENCE—EXPLAINING WRITING—BOND.

Where a bond was given conditioned upon lessee's putting certain machinery in the leased building as orally represented and agreed, evidence of oral negotiations between the parties was admissible to show what machinery was to go into the building; that not being clearly shown by the bond.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2115–2128; Dec. Dig. § 460.*]

8. TRIAL (§ 136*)—PROVINCE OF COURT.

It is the duty of the court to tell the jury the legal effect of an unambiguous written instrument.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 318, 320, 321, 323–327; Dec. Dig. § 136.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by Mrs. Pattie F. Phillips and another against Ed Marsh and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Jackson & Lessing and Jno. F. Weeks, for appellants. Jones & Jones, for appellees.

COBBS, J. This suit was instituted for the recovery of $800 as liquidated damages agreed upon and expressed in a bond dated July 30, 1909, signed by Ed Marsh and J. I. Broyles. The appellants were the owners of 25 feet of lot 20 in block 100 of Campbell's addition in the city of El Paso, known as the "International Hotel property," and agreed to lease to Joseph Herspring for a period of five years for the purpose of establishing a candy factory thereon. Appellee agreed to make certain improvements to remodel said building for that purpose at a cost of not less than $800. Joseph Herspring, on his part, was to guarantee and secure by a bond to the appellants, which he did, that he "shall take charge of and occupy the building and premises, * * * and shall place in the said building the machinery, tools, and stock as represented and claimed by them, aforesaid, on the 1st day of Sep-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

tember as agreed to by him, then, in that case, this obligation shall be void, otherwise it shall remain in full force and effect as liquidated damages to the said Mrs. Pattie F. Phillips and Mrs. A. Ross Armstrong for the expenses in making the changes as hereinbefore provided." The bond recited the improvements to be made. The improvements to be made were specified by Joseph Herspring in order for him to make the purposed use which without could not be used for the desired purpose. The bond fully recited and set out the purpose for which it was given, and that it was to reimburse for the making of the changes until the lessee should place in the "building machinery, tools, and stock, which will stand as security for the rent of the premises thereafter."

The lease between appellee and Joseph Herspring (the Herspring Candy Company) was dated the 30th day of July, 1909, and signed by Mrs. Pattie F. Phillips and Mrs. A. Ross Armstrong by J. S. Jeffries, agent, and Jos. Herspring. It was for a term of five years from the 1st day of September, A. D. 1909, for the sum of $6,000 to be paid in monthly installments of $100 per month in advance, the first to be paid September 1, 1909, and the first of each month thereafter in advance until the entire amount shall have been paid. It was stipulated therein, among other things, that Joseph Herspring would promptly pay the rent in advance on the first of each month. It was agreed at the beginning of the lease that Joseph Herspring would "put into said building a large amount of machinery and personal property for the purpose of operating a candy factory and manufacturing candy, and that to secure the payment of the said six thousand dollars hereinbefore agreed upon as the rental of said premises for the period of five years * * * a first lien upon all of the machinery, tools, and equipment as well as manufactured goods contained in the leased and rented premises aforesaid." Upon default in any payment lessor retained the right to forfeit lease and re-enter. The bond referred to the agreement in the lease of the building, and set out the specifications called for that were to be done in the remodeling of the building. The two instruments were, in effect, delivered contemporaneously, and are to be construed together. The bond was not signed by the principal. That was unimportant so far as appellees are concerned, as he was to get security satisfactory to them, which he did.

[1] He was bound to his sureties by reason of their going on his bond as such, whether he signed it or not. The improvements were made in accordance with the terms of the contract by appellee at a cost of $860; the additional $60 being for extras. Joseph Herspring accepted the building, went in possession thereof with his business, occupied said premises, and paid two months' rent. He then left. It was stipulated: "Be-

fore commencing to make such changes and improvements on said building, it was required as an evidence of good faith and security that the said Joseph Herspring, as aforesaid, will take charge of building under said lease on the 1st day of September, A. D. 1909, and have the property in the building to stand security for rent."

The evidence disclosed the fact that the parties executed the contract for lease through J. S. Jeffries, who was appellees' agent. It shows that appellants signed the bond and delivered it to Joseph Herspring, who was to sign his name thereto, but did not. He delivered it to appellees without their knowledge, though he had agreed with his sureties to sign it. Thereupon the appellees constructed the improvements and delivered possession of the building to Joseph Herspring, who put some machinery, tools, and stock in the building, used and occupied it for manufacturing candy for two months, for which he paid rent and abandoned the premises, and hence this suit.

There was a dispute upon almost every material issue in the case; the main contention being over the dispute as to whether Joseph Herspring put in the building property sufficient to comply with his agreement to provide security for his rent, the appellant contending upon this issue, placing of any machinery, tools, and stock in the building satisfied the bond, together with his taking and occupying the premises for the purposes stated, which is undisputed.

The first error assigned is to the effect "that, as Herspring placed in the leased premises property of some value and of the character and description provided for by the terms of the bond, the trial court erred in refusing to instruct for the defendants." There was no dispute that property of some value and of the character and description named was placed in the premises, but claimed it was not of sufficient quantity, description, and value to comply with the agreement and the obligation of the bond. It was not error for the court to refuse to so instruct the jury peremptorily. It was a question of fact for their determination alone as to whether the articles put in the building complied with their undertaking, in whole or substantially so, and to have taken that issue from the jury would have been an error.

[2] Nor was it of any moment that the property was subject to an express or statutory lien, or whether portions of said property placed therein were released upon the claim of a third person thereto, nor that $200 was paid in rent before the tenant abandoned the premises in order to have the effect to release appellants or in any way affect the bond, unless the quantity placed there complied with the contract. This in reply to appellants' propositions under the first assignment.

Appellants' second assignment is that the

court erred in withdrawing from the jury the issue of fact made by the pleadings, and the evidence as to whether or not the written instrument sued upon and dated the 30th day of July, 1909, was ever in fact delivered. This assignment is made upon the charge of the court that the bond "is a valid and binding obligation in law, and the defendants would be liable thereon to plaintiffs if the jury should find certain additional issues against the defendants as set forth in the charge of the court." This charge, in connection with the whole charge, in the light of the pleadings and evidence, was not error. It was practically undisputed that the bond was signed by appellants as sureties to the bond, which they themselves delivered to Herspring, who, in turn, delivered it to appellees' agent. The improvements were made upon the strength of the lease and the bond together. And this assignment is overruled.

Appellants' third assignment of error is: "The court erred is not submitting to the jury the issue as to whether or not the defendants were liable upon the written instrument—bond—even though the same was in fact delivered by Joseph Herspring to J. S. Jeffries as a bond for or on behalf of plaintiffs in this cause." Under this assignment, appellants submit in the statement a number of special charges requested, which, on account of their length, will not be copied. The first special instruction is defining the word "execute," then describing the signatures, and that a blank was left above their names, and Joseph Herspring did not have authority to deliver, and submitting to the jury that such was sufficient to put Jeffries upon inquiry why bond was not signed by the principal would have led to the information the bond was signed with the understanding it was not to be delivered otherwise, and, if they so found, to find for defendants. Another was as to whether the said bond was delivered in such manner as to be binding upon defendants; another, if they should find the bond was never in fact delivered by Joseph Herspring with the intent it should become a binding obligation, because it was agreed that Joseph Herspring would sign. There were a number of other special charges, all raising, in different forms, the same question, each one of the said charges, more or less, elaborating the point. We overrule these assignments and propositions.

[3] The proof showed, as stated above, that the bond was signed by the surety, and the principal was allowed to take the bond in such condition. They have no one to blame but themselves that it was delivered by their principal. If they supposed it was important for the principal to sign (for it neither lessened nor increased his legal liability to them) before delivering the bond, it ought to have been required that he also sign at the very moment they signed and

delivered to him, for by his not so doing ought then to have aroused their suspicion to the same extent as the same fact claimed should have put appellees upon inquiry. Appellants trusted most; they put a bond in the hands of their principal, signed by them, for the obvious purpose of delivery, and being bound for him, and, if any are to suffer, it is those who trust most in a case of this kind.

[4] The sureties cannot escape their liability because of their understanding with Herspring. The bond is valid without his signature. Bopp v. Hansford, 18 Tex. Civ. App. 340, 45 S. W. 744; Finch v. Hicks, 52 Tex. Civ. App. 427, 114 S. W. 691; Wright v. Jones, 55 Tex. Civ. App. 616, 120 S. W. 1139; First Nat. Bank v. Burns, 126 S. W. 34.

The fourth, fifth, sixth, and seventh assignments of error and the various propositions thereunder present, in effect, the same question last above disposed of, and they are overruled.

The eighth assignment of error is the presentation of the same supposed error in another form and complains that the court refused instruction No. 8 that should have been given. The charge sets out the recitals in the bond, and then instructs the jury: "It is the duty and province of the court to construe the same * * * as to the legal effect * * * under the terms and provisions of said contract above set forth that if said Joseph Herspring placed in said building machinery, tools, and stock which would stand as security for rent of the premises thereafter that then and in that event the said Joseph Herspring complied with the terms of said bond, it being shown by the undisputed evidence and the pleading of the parties that he took possession of the said premises on or about the 1st day of September, 1909, and thereby complied with the provision of the bond. The court also instructs you that it is wholly immaterial as to what may have been the character, quality, or value of the machinery, tools, and stock so placed in said building, if they were placed there by said Herspring so that same became security for rents." This charge was error. If it were a correct charge in the light of the testimony, then the court would have erred in not instructing a verdict. If placing some of the articles in the store in connection with Herspring's occupancy for two months would have satisfied the bond, appellees would have no standing in court, for it is undisputed that he did put some there.

[5] There were other recitals and covenants in the bond. The bond referred to the lease by Joseph Herspring of "the said building and premises for the period of five years for the purpose of establishing a candy factory" and "necessary for certain changes to be made in said building" which was in the minds of the parties, and stated in the bond,

"at a cost of $800," and the condition in the bond was, "shall place in the said building the machinery, tools, and stock as represented and claimed by them as aforesaid, on the 1st day of September as agreed to by him, then in that case this obligation shall be void, otherwise it shall remain in full force and effect as liquidated damages." The lease provided there should be "put in the building a large amount of machinery and personal property for the purpose of operating a candy factory and manufacturing candy to secure" the $6,000, and gave a first lien on the material to be put therein. Hence they were bound by the terms of that bond at least to a substantial compliance, and to put some of the articles there would not answer. It was a question of fact for the jury to ascertain from all the evidence whether there was a substantial compliance; if not, they were liable for the full amount of $800. The parties bound themselves to pay $800 liquidated damages, if Herspring did not comply with his agreement, and whether he did so or not was a question of fact alone to be submitted to the jury. The jury found he did not.

[6] There is no language in the bond to justify any construction that the amount specified was for a penalty that might diminish the recovery upon proof. On the contrary, it is a clear and precise agreement to pay liquidated damages. Such a question will be found very fully discussed in an opinion from this court by the late Justice Neill. Santa Fé Ry. Co. v. Schutz, 37 Tex. Civ. App. 14, 83 S. W. 45; Beauchamp v. Couch et al., 54 Tex. Civ. App. 471, 117 S. W. 925. The case of Work et al. v. Cross, 98 S. W. 208, relied upon by appellants, is not in conflict with the doctrine contended for by appellees, supported by above-named authorities. The facts upon which the ruling was made in Work v. Cross, supra, are not set out, but there is enough in the ruling of the court to show a very marked difference. In this case, the sole question was based upon a bond that specified liquidated damages, fixed and agreed upon, for nonperformance. In the other, it involved a question of salary, the right to discharge, and additional damages that might be incurred by reason of increased expenses and expenditures.

[7] The fifteenth assignment of error complains of the action of the court in permitting oral negotiations between the said Jeffries as agent of plaintiffs. These explanations did not contradict the written instrument. It made clear that which might have been considered ambiguous as to what was to go in the building and stand as security for the rent, for the bond itself had reference to such oral understandings, and in connection therewith used this language: "As represented and claimed by them aforesaid on the 1st day of September as agreed to by him." Davis v. Sisk, 49 Tex. Civ. App. 192, 108 S. W. 473. It was for the jury to determine under the evidence what was put in the store, and whether it was a substantial compliance. If so, the verdict would have been for appellants, but they found otherwise. We have examined the charge of the court, and find it free from error.

[8] It was the duty of the court to define the legal effect of the written instrument. It was proper to submit the question to the jury to ascertain whether or not there had been a substantial compliance with the contracts, as already discussed. Mr. Simpkins discusses this subject in his work on Texas Contracts, p. 518, citing Texas authorities.

We have carefully considered each and every one of the errors assigned, and propositions thereunder, and overrule them all.

Affirmed.