### MIDKIFF v. BENSON.   (No. 1253.)

(Court of Civil Appeals of Texas. El Paso. Nov. 10, 1921. Rehearing Denied Dec. 1, 1921.)

1. **Evidence ⬅═376(1)—Plaintiff not permitted to testify to bookkeeper's entries without evidence that they were correct.**

Where the daily entries of the receipts of plaintiff's business were made by his bookkeeper and he merely checked them up each month, and neither the bookkeeper nor anybody else testified that the entries were correct, plaintiff should not have been permitted to testify to such entries and to the monthly receipts based on such entries.

2. **Appeal and error ⬅═1050(1)—Admission of improper evidence as to book entries held harmless in view of other evidence.**

In an action against a landlord for failing to repair, causing a tenant loss of patronage, the erroneous admission of plaintiff's evidence concerning the receipts of his business, as shown by entries made by his bookkeeper, *held* not reversible error, in view of other evidence as to the loss of patronage and plaintiff's estimates as to the receipts for other months.

3. **Landlord and tenant ⬅═154(2)—Tenant's failure to pay license no defense to landlord's failure to repair.**

In an action for damages from a landlord's failure to repair premises used as a pool room, the fact that plaintiff had not paid the pool room tax or license was immaterial.

4. **Appeal and error ⬅═1046(5)—Court's remark that he did not see what testimony had to do with case held not reversible error.**

In an action for damages from a landlord's failure to repair premises used as a pool room, the court's remark, with reference to testimony concerning plaintiff's failure to pay the pool hall tax or license, that he did not see what it had to do with the facts in the case, though not commendable, was not reversible error.

5. **Trial ⬅═198—Duty of court to construe unambiguous provisions of lease.**

In an action for damages from a landlord's failure to repair, where the provision in the lease as to repairs was clear and unambiguous, it was the court's duty to construe the covenant.

6. **Landlord and tenant ⬅═152(4)—Landlord contracting to repair held bound to remedy conditions caused by prior existing open stairway.**

Where a lessor of a basement used as a pool room agreed to keep the building in repair, and rain, snow, and sleet came into the basement from an open stairway, it was his duty

to do what was reasonably necessary to prevent such condition, and the mere fact that the open stairway existed at the date of the lease did not relieve him from such duty.

Appeal from District Court, Presidio County; Joseph Jones, Judge.

Action by J. H. Benson against J. C. Midkiff. From a judgment for plaintiff, defendant appeals. Affirmed.

J. Q. Henry, of Del Rio, and Anderson & Upton, of San Angelo, for appellant.

C. R. Sutton and Mead & Metcalfe, all of Marfa, for appellee.

WALTHALL, J. This is a second appeal of this case. The first is reported in 225 S. W. 186, and to which we refer for a discussion of some of the issues presented here.

This suit was brought by appellee, J. H. Benson, against appellants, J. C. Midkiff and wife, for damages resulting from an alleged breach of a lease contract leasing the basement of a house in Marfa, Tex., for a period of three years beginning with July 26, 1918, to be used by appellee as a pool hall.

The building consists of two stories and the basement, the first and second stories being leased to other parties. The lease contract, while introduced in evidence, is not found in the record, but in appellant's statement of the nature and result of the suit, and elsewhere in the record, it is said that the written lease provided that appellant would "keep the building in repair during the term of the lease." Appellee alleged that he sustained damages as the result of water in large quantities leaking through the ceiling and floor above said basement and on said pool tables, six in number, and that sleet, ice, snow, and water came into said basement through an open stairway leading from the street into said basement, and premises; that said conditions continued from time to time; that by reason of said conditions the pool tables were greatly damaged, stating in detail the damage to the several tables, and the amount of damage to each; that the water coming in, as alleged, stood on the floor of the said basement in such quantities and so deep as to cause the floor to warp, buckle, and become uneven so that customers could not play at the games usually played at such places of business.

The several items of damage to the pool tables appellee alleged to be $800, and the damage growing out of loss in patronage he alleged to be $1,800. Appellee alleged that he sustained other damages by reason of the matters complained of, but same were not submitted.

Appellant answered by general and special exceptions, general denial, special plea that the open stairway complained of was constructed with the knowledge and consent of appellee prior to the lease, and that any damage resulting from the open stairway appellee assumed; that when appellee leased the building he was in possession of it; that at the time of the lease the building was in good condition and was accepted by appellee; that if any injury occurred it was occasioned by means beyond the control of appellant, was unavoidable, and for which appellant was not liable; that if plaintiff was damaged it was because he failed, neglected, and refused to use such means as persons of ordinary prudence would use to avoid injury; and that any injury appellee suffered was the result of his own negligence.

The case was tried to a jury and submitted on special issues, resulting in a verdict in favor of appellee, on the item of loss in patronage in the sum of $600, and damages to the pool tables in the sum of $250. The court instructed a verdict in favor of Mrs. Midkiff, and entered judgment in favor of appellee and against appellant, J. C. Midkiff, for the sum of $850.

[1] Appellant presents six assignments of error. The first assignment goes to the admission in evidence, over objection, of certain testimony of appellee. Benson testified that he kept books showing the daily receipts of the business, and after having testified that Nay Bowles began working for him in February, 1918, and kept the books, and that he (Benson) checked them up by the month from that time on, but that Nay Bowles made the daily entries, the objection was to the statement of Benson as to the daily entries of receipts from the pool tables in the books kept by Bowles, and from which daily entries so kept Benson made up the several monthly aggregates of receipts for the months the books were kept by Bowles, and testified to such daily book entries and the aggregates therefrom for the months of February, March, and April, 1919. From such monthly aggregates as compared with corresponding months of 1917 and 1918, Benson estimated his monthly losses for February, March, and April, 1919.

[2] We think it was error to permit Benson to testify to the daily entries made by Bowles, and from such entries testify to the monthly receipts made from such entries. The record does not disclose any evidence to show that the daily entries made by Bowles were correctly kept and correctly entered in the daily cash entries. The monthly estimates of receipts for the same months made up by Benson from the daily entries made by Bowles would be but a recitation in the aggregate of what the daily entries in the cash register show. The evidence should have been excluded on the objections made. Bowles was on the witness stand and could have testified as to the correctness of the entries made by him. Texas & Pacific

Ry. Co. v. Leggett, 86 S. W. 1066, and the same case on the second appeal, 44 Tex. Civ. App. 296, 99 S. W. 176, and cases there cited. But we cannot say that the admission of the evidence for the three months stated presents reversible error. If we exclude the estimates made for the three months of February, March, and April, 1919, we still have the estimates for other months made by Benson himself, and from which the amount of loss found by the jury, $600, can, we think, properly be considered.

Also, there is other evidence in the record showing loss of patronage by reason of the matters complained of, including the said three months, the entries made by Bowles, and the computations therefrom by Benson going only to a more specific statement of the loss of patronage for the three months than evidence offered, as to a general loss or falling off in patronage for the whole time the basement was occupied.

[3, 4] The second assignment does not present reversible error. The fact that Benson had not paid the pool hall tax or license for the years 1918 and 1919 was immaterial, we think, and the remark made by the court that "I do not see what this testimony has to do with the facts in this case any way," referring to the nonpayment of the tax, while not to be commended, does not present reversible error. Counsel has stated to the court that they expected to prove by the witness the tax collector the nonpayment of the tax.

[5] The court was not in error, as complained of in the third assignment, in the charge construing the covenant in the lease contract in which the owner of the building, appellant, agreed to keep the building in repair during the life of the lease. The suit was based on the lease contract, and it was alleged that the covenant in the lease to keep the building in repair was breached, and the damages suffered, it was alleged, was a result of the breach. The charge made no reference to the evidence offered, nor to the evidence necessary to sustain the allegation of the breach of the covenant. The lease was introduced in evidence, and there is no controversy but that the covenant construed in the charge was in the lease. The provision in the lease being clear and unambiguous, it was the duty of the court to construe the covenant.

[6] The fourth and fifth assignments are directed to the refusal of the court to give the requested special charges 4 and 5, each to the effect that, if the jury found the open stairway leading from the street to the basement was constructed before the execution of the lease, appellee could not recover damages resulting from the open stairway.

There was no error in the refusal to give either of the charges. It was the duty of appellant under the covenant in the contract to keep the building in such repair as would be reasonably necessary to prevent damages resulting from the use of the building for which it was leased. The open stairway was a part of the building, and the approach to the basement. Damages might not have resulted in some uses of the basement by reason of the open stairway, while in its use as a pool hall damages might result therefrom. The one fact requested to be submitted, the existence of the open stairway at the date of the lease, would not, we think, relieve the appellant from the duty of keeping the building, including the open stairway, the approach to the basement, in such repair as would be reasonably necessary for a full employment of the basement for the purposes for which it was leased. If rain, snow, and sleet came into the basement from the open stairway, as alleged, and caused damages, we think it was the duty of appellant to do what was reasonably necessary to prevent such condition.

In Lovejoy v. Townsend, 25 Tex. Civ. App. 385, 61 S. W. 331, under a covenant of the landlord to keep the demised premises in repair, it was held that it was immaterial whether or not the roof was in the defective condition at the date of the lease; the lease obligated the landlord to keep it in repair.

The principle contended for by appellant, under the two assignments, is the well-established rule that the tenant in the absence of an agreement takes the leased premises as he finds them, under the doctrine of caveat emptor. The agreement, as here, to keep the premises in repair, takes the cases out of the rule. In Walling v. Houston & T. C. Ry. Co., 195 S. W. 232, to which we are referred, there was no agreement to save the lessee, Walling, from loss by fire; but, to the contrary, the lease contract with the railroad, it not embracing property for which the road could be held liable as a common carrier, specially released the road from liability on account of loss or damage by fire.

The sixth assignment challenges the sufficiency of the evidence to support the findings of the jury on the two issues of loss of profits and damages to the tables. A careful review of the evidence satisfies us that, while the evidence is conflicting as to the amount of the damage to the tables, it is sufficient to support the finding. The jury attributed some of the loss or falling off in the patronage to the conditions of the pool hall; whether to the conditions of the tables or the basement itself, or both, made so by the matters complained of, we do not know. Either or both of the conditions stated by some of the witnesses would be well calculated, we can well imagine, to cause patrons of the pool games to go elsewhere for a game. The jury heard the evidence and would be better able to pass upon the facts than would

this court. The findings have support in the evidence.

Finding no reversible error, the case is affirmed.